UNITED STATED DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| DENVEY EBANKS | * | CIVIL ACTION NO.: 08-1340 |
| | * | |
| VERSUS | * | SECTION C (1) |
| | * | |
| OFFSHORE LIFTBOATS, L.L.C. | * | JUDGE BERRIGAN |
| AND C&E BOAT RENTAL, L.L.C. | * | |
| | * | MAGISTRATE SHUSHAN |

**************************************

## MEMORANDUM IN SUPPORT OF GULF OFFSHORE LOGISTICS, L.L.C.'S MOTION FOR SUMMARY JUDGMENT ON DEFENSE AND INDEMNITY AGAINST NIPPON OIL EXPLORAIONT U.S.A., LTD.

### I.    INTRODUCTION

This matter raises the issue of whether a party to a master service contract can be required to indemnify another party for contractual liability incurred in connection with performance under the master service contract when the master service contract contains an indemnity provision which requires indemnity for all "Claims . . . on account of any cause whatsoever." This issue is a simple matter of contractual interpretation and case law is clear that, where, as here, the right to indemnity for contractual liabilities is expressly stated, the party seeking indemnity can recover for liabilities arising from contractual obligations.

This matter arises from the alleged personal injury of Denvey Ebanks during a personnel

basket transfer on December 17, 2007 from the M/V BETTY CHERAMIE to the L/B JANIE at South Marsh Island 34-I. Ebanks alleges that he sustained injury when the crew basket, operated by the crane on the L/B JANIE, contacted the stacks of the M/V BETTY CHERAMIE while both vessels were alongside the platform at South Marsh Island 34-I. At the time, Ebanks was an employee of third-party defendant Island Operating Company, Inc. ("Island"), a company which provides operating services to third-party defendant Nippon Oil Exploration U.S.A., Limited ("Nippon") pursuant to a July 28, 1998 Master Service Contract.[8] Movant and third-party defendant Gulf Offshore Logistics, L.L.C. ("GOL") was the time charterer of both vessels alleged to be involved in Ebanks' injury. GOL chartered the L/B JANIE and M/V BETTY CHERAMIE from Offshore Liftboats, L.L.C. and C&E Boat Rentals, L.L.C. ("C&E"), respectively.

GOL chartered the vessels to Nippon pursuant to a Master Service Contract executed by Nippon on June 27, 2005.[9] Additionally, Nippon executed, as charterer, identical copies of the September 1, 2006 and May 3, 2007 time charters between GOL and Offshore Liftboats for the L/B JANIE.[10] GOL chartered the M/V BETTY CHERAMIE from C&E pursuant to a March 30, 2004

---

[8] Master Service Contract dated July 28, 1998 between Nippon Oil Exploration U.S.A., Ltd. and Island Operating Co., Inc., attached hereto as Exhibit "D."

[9] Exhibit "A"

[10] Time Charters dated September 1, 2006 and May 3, 2007 between Nippon Oil Exploration U.S.A, Ltd., Gulf Offshore Logistics, L.L.C., and Offshore Liftboats, L.L.C., attached hereto as Exhibits "C" and "E," respectively.

Master Time Charter.[11]  The charter was later confirmed with a charter order confirmation naming

GOL and Nippon as charterers.[12]  Nippon did not execute the charter order confirmation.[13]

## II.    BACKGROUND

Plaintiff filed suit on March 19, 2008, naming Offshore Liftboats and C&E as defendants.

On July 17, 2008, Offshore Liftboats filed third-party demand against GOL citing the time charter

in effect between GOL and Offshore Liftboats at the time.  On March 26, 2009, GOL filed third-

party demands against Nippon and Island pursuant to the respective Master Service Contracts and

filed a cross-claim against C&E pursuant to the Master Time Charter between GOL and C&E.  On

April 28, 2009, Nippon filed its answer asserting defense including: 1) that GOL was not chartering

vessels for Nippon pursuant to the Master Service Contract between GOL and Nippon, 2) that GOL

was chartering vessels pursuant to a separate Time Charter between GOL and Nippon executed on

September 1, 2006 which does not require indemnity, and 3) that there is no written contract in effect

between GOL and Nippon at the time of the accident.  On May 18, 2009, GOL agreed to defend and

indemnify Offshore Liftboats pursuant to the indemnity provisions contained in the Time Charter

between GOL and Offshore Liftboats.  GOL now seeks indemnity from Nippon pursuant to the

---

[11] Master Time Charter dated March 30, 2004 between C&E Boat Rentals, L.L.C. and Gulf Offshore Logistics, L.L.C., attached hereto as Exhibit "F."

[12] Charter Order Confirmation effective from March 1, 2007 to March 31, 2008 between C&E Boat Rentals, L.L.C. and Gulf Offshore Logistics, L.L.C., attached hereto as Exhibit "G."

[13] Exhibit "G"

Master Service Contract between GOL and Nippon.

The Master Service Contract between GOL and Nippon provides that it "*shall control and govern all work* performed by Contractor [GOL] for Company [Nippon] *under oral or written work or purchase orders at all times until canceled by either party*."[14] Specifically, "Company [Nippon] may from time to time (i) employ the services of Contractor [GOL] in connection with the construction and/or operation of properties and facilities for exploration, development or production of oil, gas or other minerals and/or (ii) purchase or rent goods, equipment, or facilities from Contractor [GOL]."[15] The Master Service Contract between GOL and Nippon is controlling over "*all work or purchase orders . . . and shall be deemed to be incorporated in full in every subsequent . . . work or purchase order*."[16] Section 12 of the Master Service Contract between GOL and Nippon, entitled "Mutual Indemnities," provides for what is commonly know as "knock-for-knock" indemnity.[17] As regards indemnification of GOL, Section 12 states that:

> Company [Nippon] agrees to protect, defend, indemnify and hold harmless Contractor's [GOL's] Group from and against any and all Claims . . . by any member of Company's [Nippon's] Group . . . for personal or bodily injury to, for illness, disease or death of, or for loss of services, wages, consortium or society by any such member, which are asserted by or arise in favor of any member of Company's

---

[14] Exhibit "A" (emphasis added).

[15] Exhibit "A," § 1.

[16] Exhibit "A," § 1 (emphasis added).

[17] Exhibit "A," § 12.

4

[Nippon's] Group on account of any cause whatsoever . . . [18]

For the purposes of Section 12, a "Claim" is defined as:

> [C]laims, demands, disputes, losses, damages, awards, liabilities, settlements, interest, penalties, fines, administrative and judicial proceedings and orders, judgments and enforcement actions of any kind and nature, known or unknown, contingent or otherwise, and all costs and expenses incurred in connection therewith . . . which in any way arise out or are related to the performance of work under, or related to the subject matter of, this Contract.[19]

Additionally, the broad definition of "Claim" found in Section 12 is confirmed in subsection (m):

> The exclusions of liability and the mutual releases and mutual indemnities set forth in this Section 12 shall apply to any Claim or Claims without regard to the cause or causes thereof including, but not limited to, Claims caused by, resulting from, arising out of or incidental to pre-existing conditions . . . , ultra hazardous activities, strict liability, tort, *breach of contract*, breach of statutory duty, breach of any safety requirement or regulation, or the negligence of any person (including the indemnified individual or entity), whether such negligence be sole, joint and/or concurrent, active or passive, or such Claim is based on any other theory of legal liability.[20]

Section 12 defines "Company's [Nippon's] Group" as "(i) Company, its parent, subsidiary, affiliated and interested corporations, companies and other entities, (ii) its and their . . . contractors . . . , (iii) the . . . employees . . . of those . . . entities identified in (i) or (ii) hereinabove."[21]

"Contractor's [GOL's] Group" is defined as "Contractor, its parent, subsidiary, affiliated and

---

[18] Exhibit "A," § 12(e).

[19] Exhibit "A," § 12(c).

[20] Exhibit "A," § 12(m) (emphasis added).

[21] Exhibit "A," § 12(a).

5

interested corporations, companies and other entities, (ii) its and their . . . subcontractors . . . , (iii) the . . . employees . . . of those . . . entities identified in (i) or (ii) hereinabove."[22]

### III.    LAW AND ARGUMENT

### A.    SUMMARY JUDGMENT IS APPROPRIATE

Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.[23]  To defeat a motion for summary judgment, the opposing party must show specific facts which demonstrate that there is a genuine issue for trial.[24] The burden required to oppose a motion for summary judgment requires proof beyond metaphysical doubt, conclusory allegations, unsubstantiated assertions, or a mere scintilla of evidence.[25]  A fact is material if it "might affect the outcome of the suit."[26]  A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[27]  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine

---

[22] Exhibit "A," § 12(b).

[23] Fed. R. Civ. P. 56(c).

[24] *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986).

[25] *Little v. Liquid Air. Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).

[26] *Id.*

[27] *Id.*

6

issue for trial."[28]   When a motion for summary judgment concerns the interpretation of a contract,

courts will construe a contract as a matter of law when the contract "is so worded that it can be given

a certain definite legal meaning or interpretation."[29]

**B.    GOL IS ENTITLED TO DEFENSE AND INDEMNITY FROM NIPPON FOR THE CONTRACTUAL LIABILITY UNDERTAKEN BY GOL UNDER THE TERMS OF THE MASTER SERVICE CONTRACT IN EFFECT BETWEEN GOL AND NIPPON.**

Section 12 of the Master Service Contract between GOL and Nippon entitles GOL to defense

and indemnity from Nippon for the contractual liabilities suffered by GOL in connection with the

indemnification of Offshore Liftboats.   An indemnity contract "should be construed to cover the

losses, damages, or liabilities which reasonably appear to have been within the contemplation of the

parties."[30]   In regards to indemnity for contractual obligations, no special words are necessary to

evidence an intention to indemnify a party for contractual liabilities, but the language purported to

support a right of indemnification for contractual obligations "must clearly express such a

purpose."[31]

Here, Section 12 clearly expresses an intent for Nippon to provide indemnity for contractual

liabilities incurred by GOL arising out of or related to the Master Service Contract.   Section 12

---

[28] *Matsushita*, 475 U.S. at 587, 106 S.Ct. At 1356.

[29] *Weir v. Fed. Asset Disposition Assoc.*, 123 F.3d 281, 286 (5th Cir. 1997).

[30] *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 333 (5th Cir. 1981).

[31] *Id.*

7

requires Nippon to indemnify GOL and those in GOL's group, including Offshore Liftboats as a sub-contractor, for "Claims" asserted by members of Nippon's group, including Ebanks, an employee of Nippon's contractor Island, "on account of any cause whatsoever."[32]  Further, Section 12 has a broad definition of "Claims" and that definition includes "liabilities, settlements . . . of any kind and nature, known or unknown, and all coast and expenses incurred in connection therewith . . . which in any way arise out of or are related to the performance of work under, or related to the subject matter of, this Contract."[33]  This language evidences a clear intent on the part of Nippon to provide indemnity in situations, such as the one in the case at bar, where an indemnitee has incurred liability through a settlement with one of its contractors as a result of a claim filed by the employee of Nippon's contractor when the liability arose through a contract entered into in satisfaction of the contract containing the indemnity agreement.

In its answer, Nippon raises several potential defenses to the enforcement of the indemnity provisions in Section 12, all of which relate to the existence or enforceability of the Master Service Contract.  Nippon's argument fails for three reasons: 1) the Master Service Contract is enforceable, 2) the definition of "Claims" includes contractual liability, and 3) inclusion of subcontractors in "Contractor's Group" clearly contemplates indemnification for contractual liability.

_____

[32] Exhibit "A," § 12.

[33] Exhibit "A," § 12(c).

8

1.     **The Master Service Contract Between GOL and Nippon Is Enforceable**.

The contract at issue here, a Master Service Contract, is an enforceable agreement between Nippon, an oil exploration company, and GOL, a charterer and boat broker, for the provision of boat chartering services for Nippon.  As such, the Master Service Contract is a contract for the chartering of vessels and, thus, is subject to maritime law.[34]  In order to create an enforceable time charter under maritime law, there must be a meeting of the minds on the essential terms of the contract.[35] Traditionally, binding time charters have been entered into "on nothing more formal than the nod of a head."[36]

In its answer, Nippon claims that 1) the Master Service Contract does not cover the chartering of vessels and 2) there was no written contract in effect between GOL and Nippon at the time of the alleged incident giving rise to the case at bar.  Neither of these claims can be supported.

     a.     *The Master Service Contract covers chartering of vessels.*

The Master Service Contract does cover the chartering of vessels by GOL for the benefit of Nippon.  The Master Service Contract "control[s] and govern[s] *all* work performed by Contractor for Company . . . at all times until canceled by either party."[37]  Additionally, the Master Service Contract states that "Company desires to employ the services of Contractor from time to time in

---

[34] *Kossick v. United Fruit Co.*, 365 U.S. 731, 735 (1961).

[35] *Interocean Shipping Co. v. National Shipping and Trading Corp.*, 523 F.2d 527, 534 (2d Cir. 1975).

[36]  *Circle Lines, Ltd. v. Matheson & Co., Ltd.*, 681 F.2d 121, 124 (2d Cir. 1982).

[37] Exhibit "A"

connection with its business activities."[38] Those business activities include "the construction and/or operation of properties and facilities for exploration development or production of oil, gas or other minerals."[39]

Here, there can be no reasonable argument that the Master Service Contract does not "control and govern" the chartering of vessels. Nippon is engaged in the business of oil exploration in the Gulf of Mexico and GOL is engaged in the business of chartering and brokering boats for its clients. It is undisputed that, on December 17, 2007, the M/V BETTY CHERAMIE, chartered to GOL from C&E, was transporting employees of Island and that Island was performing operating services for Nippon at the time. Additionally, it is undisputed that the L/B JANIE, chartered to GOL from Offshore Liftboats, was jacked up along side the production platform at South Marsh Island 34-I and the L/B JANIE'S crane was transferring Island employees from the M/V BETTY CHERAMIE via a personnel basket.

As regards the M/V BETTY CHERAMIE, the Charter Order Confirmation between GOL and C&E, alone, proves that the Master Service Contract is a contract for chartering vessels.[40] The language of that Charter Order, executed as part of a Master Time Charter between GOL and C&E states that Nippon and GOL "Pursuant to the terms of the Blanket Time Charter Agreement dated

---

[38] Exhibit "A"

[39] Exhibit "A"

[40] Exhibit "G"

10

June 27, 2005 . . . hereby time charters the M/V Betty Cheramie from C&E Boat Rentals."[41]

Clearly, GOL's services as a charterer were instrumental in Nippon's business activities in connection with the "operation of facilities for exploration, development or production of oil, gas or other minerals" on December 17, 2007. Additionally, other entities involved in the chartering of vessels for Nippon through GOL conducted their activities under the knowledge that the Master Service Contract between GOL and Nippon was a contract for chartering vessels. Thus, the Master Service Contract between GOL and Nippon "controls and governs" the chartering service GOL provided to Nippon on December 17, 2007 and the indemnity provisions in Section 12 should decide the present motion.

> **b.**      ***There is a written contract between GOL and Nippon, and, even if there was not, a binding contract will still exist under maritime law.***

Nippon's defense that there is no written contract between GOL and Nippon is both wrong and irrelevant. The defense is incorrect because a simple review of the Master Service Contract reveals a detailed fifteen page contract containing three exhibits which is signed and dated by Lane Fournier, Vice President of GOL, and L. Charles Scholz, Vice President of Nippon, along with four witnesses.[42] Further, the contract is effective "until canceled by either party."[43]

Additionally, this defense is irrelevant because the Master Service Contract is a time charter

---

[41] Exhibit "G"

[42] Exhibit "A"

[43] Exhibit "A"

11

and is governed by maritime law.[44]  Under maritime law a written contract is not necessary and only a meeting of the minds is necessary.[45]  This view of contractual formality also extends to the indemnity provisions contained in time charters,[46] so long as the agreement to indemnify is expressly stated.[47]  Therefore, the Master Service Contract between GOL and Nippon and the indemnity agreement contained therein is enforceable because the contract is for the chartering of vessels.

## 2.    The Definition Of "Claims" Requires Nippon To Indemnify GOL For GOL's Contractual Liability to Offshore Liftboats.

Nippon is required to indemnify GOL for GOL's contractual liability to Offshore Liftboats because Section 12 requires Nippon to indemnify GOL for "Claims" which includes liabilities and settlements "of any kind and nature . . . which in way arise out or are related to" the work or the contract and specifically includes liability for contractual claims.[48]  A contractual section providing for indemnity between the parties should be construed "to cover all losses which reasonably appear to have been within the parties' contemplation."[49]  In order to create a right of indemnity for

------

[44] *Kossick* , 365 U.S. at 735.

[45] *Interocean Shipping Co.*, 523 F.2d at 534; *Circle Lines, Ltd.*, 681 F.2d at 124.

[46] *Ryan Stevedoring Co., Inc. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 141 (1956) (Black, J. dissenting)  (Concurring with the majority on that point).

[47] *Id.* at 134.

[48] Exhibit "A," § 12.

[49] *Breaux v. Halliburton Energy Serv.*, 562 F.3d 358, 364 (5th Cir. 2009) (quoting *Foreman v. Exxon Corp.*, 770 F.2d 190, 496 (5th Cir. 1985)).

contractual liabilities an indemnity section must "clearly express such a purpose," but no special words are necessary to create the right.[50]

In *Sumrall v. Ensco Offshore Co.*, the Fifth Circuit held that a right to indemnity for contractual liability existed where the indemnity section in the contract at issue provided indemnity "from and against all claims, losses, costs, demands, damages, suits, . . . and causes of action of whatsoever nature or character . . . whether arising out of contract, tort . . . or *any cause whatsoever* . . . which in any way *arise out of or are related to this Contract*."[51] The court found the language providing indemnity for, specifically, contract claims and, generally, "all claims . . . of whatsoever nature or character" expansive and demonstrative of the employer's intent to indemnify the rig operator for contractual relationships with third-parties, such as the one that existed between rig operator and boat owner, upon whose boat Sumrall was injured.[52]

Similarly, in *Breaux*, the Fifth Circuit held that an indemnity provision which provided indemnity for "all liability arising out of all claims, liabilities, demands, actions, damages, losses, and expenses for personal or bodily injury" provided third-party plaintiff Haliburton a right to indemnity for liabilities arising from contractual obligations with third-parties.[53] The court found

_____

[50] *Corbitt*, 654 F.2d at 334.

[51] *Sumrall v. Ensco Offshore Co.*, 261 F.3d 316, 318 n.4 (5th Cir. 2002) (emphasis added).

[52] *Id.* at 320.

[53] *Breaux*, 562 F.3d at 364-65.

13

that such expansive language in the indemnity provision provided express notice to the indemnifying party.[54]

In both *Sumrall* and *Breaux*, the parties seeking to avoid providing indemnity for contractual liabilities relied upon *Corbitt v. Diamond M. Drilling*.[55]  Unlike the cases cited above, the Fifth Circuit, in *Corbitt*, refused to hold that a right to indemnity for contractual liability existed when the contract at issue provided indemnity for "all claims, suits, liabilities and expenses on account of injury or death of persons . . . arising out of or in connection with performance of this Order."  While *Corbitt* provides the legal framework for indemnity of contractual liabilities its specific holding has been consistently distinguished by the cases following it.[56]

However, when the foregoing opinions are read together a very clear picture of the requirements of indemnity for contractual liabilities is established.  For example, in *Clayton Williams Energy, Inc. v. National Union Fire Ins. Co. of La.*, the Court held that contractual language requiring indemnity "from and against *all . . . demands . . . of every kind and character without limit and without regard to the cause or causes thereof*" created a right to indemnity for contractual liability.[57]  The Court found that the language at issue was similar in nature to the language the Fifth

---

[54] *Id.* at 366.

[55] *Id.* at 365; *Sumrall*, 291 F.3d at 318.

[56] Daniel B. Shilliday et al., *Contractual Risk-Shifting In Offshore Energy Operations*, 81 Tul. L. Rev. 1579, 1602-04 (2007).

[57] *Clayton Williams Energy, Inc. v. National Union Fire Ins. Co. of La.*, No. 03-2980, 2004 WL 2452780, at *15 (D. La. Nov. 1, 2004) (emphasis in original).

14

Circuit found expansive in *Sumrall*.[58] Further, the Court found that the failure to include "an express reference to indemnification for obligations 'whether arising out of tort [or] contract," was not a controlling difference because the Fifth Circuit, in *Corbitt*, held that no special words are necessary to create a right of indemnity for contractual liability.[59]

Conversely, in *Walter Oil & Gas Corp. v. Safeguard Disposal Systems, Inc.*, the Court held that language substantially similar to the indemnity provisions in *Clayton Williams Energy, Inc.* and *Breaux* did not provide a right to indemnity for contractual liability when that language required indemnity for "any and all claims, demand, or action for damage to persons and/or property."[60] The Court's ultimate holding did not turn on whether a right to indemnity for contractual liabilities existed,[61] but the Court's findings regarding the indemnity language are instructive in demonstrating the change in the law. Compared to *Breaux*, there is no real difference in the language evaluated; however, the Fifth Circuit, in *Breaux*, held that such language did create a right to indemnity for contractual liabilities.[62]

Here, Section 12 provides indemnity from Nippon to GOL for GOL's contractual liability

---

[58] *Id.*(citing *Sumrall*, 291 F.3d at 318-20).

[59] *Id.* (citing *Sumrall*, 291 F.3d at 318-20 and *Corbitt*, 654 F.2d at 334).

[60] *Walter Oil & Gas Corp. v. Safeguard Disposal Sys., Inc.*, 961 F. Supp. 931, 934-35 (E.D. La. 1996).

[61] *Id.*

[62] Compare *Id.* with *Breaux*, 562 F.3d at 364-65.

to indemnify Offshore Liftboats. As in *Sumrall*, where language providing indemnity for breach of contract, specifically, and "claims . . . of whatsoever nature or character . . . ," generally, was found to demonstrate the contracting parties intent to provide expansive indemnity for contractual liabilities, Section 12 should similarly be found to provide indemnity for GOL's contractual liabilities because it requires Nippon to indemnify GOL for "any and all 'Claims' . . . on account of any cause whatsoever" which, as further specified in Section 12(m) includes breach of contract.[63]

Further, the word "Claims" has a broad definition and includes "liabilities . . . of any kind and nature . . . which in any way arise out of or are related to . . . this Contract."[64] This is similar to the language used in *Breaux* where the use of "all liabilities" in the indemnity provision at issue was held to place the contracting parties on express notice of the duty to indemnity for contractual liabilities.

Additionally, as this Court held in *Clayton Williams Energy*, the use of language requiting indemnity for "all . . . demands" is sufficiently express, without the use of any special language to create a right of indemnity for contractual liabilities. Here, Section 12 should be held to similarly provide a right of indemnity for contractual liabilities because it contains language requiring Nippon to indemnify GOL for "all Claims" and the words "Claims" includes "demands . . . which in any way

---

[63] Exhibit "A," § 12.

[64] Exhibit "A," § 12(c).

arise out of or are related to . . . this Contract."[65]

Finally, the holding of *Walter Oil & Gas Corp.* has been, at least, impliedly overturned by subsequent decisions. However, compared to the contract at issue in *Walter Oil & Gas Corp.*, the contract here is far more specific in its indemnity language. In *Walter*, the language at issue, "any and all claims, demand, or action for damage to persons and/or property," was held not to provide a right of indemnity for contractual liabilities. The contract here, on the other hand, extends indemnity to "claims, demands, . . . , liabilities, settlements, . . . of any kind and nature."[66] Clearly the language at issue here is far more expansive than the language at issue in *Walter Oil & Gas Corp.*

Therefore, Section 12 gives GOL a right to indemnity for its contractual liabilities because the contract has a broad definition of the word "Claims" and specifically includes language regarding contractual liabilities.

### 3. The Inclusion Of Subcontractors In The Definition Of "Contractor's Group" Contemplates Contractual Indemnity And Requires Nippon To Indemnify GOL for GOL's Obligation To Indemnify Offshore Liftboats.

Nippon is required to indemnify GOL for its contractual liability to Nippon because GOL is Nippon's contractor and Section 12 defines "Contractor's Group" as both the contractor [GOL] and the subcontractor [Offshore Liftboats].[67] Where a contract for indemnity includes indemnity for

---

[65] Exhibit "A," § 12.

[66] Exhibit "A," § 12(c).

[67] Exhibit "A," § 12(b).

17

subcontractors the contractor is viewed as a mere conduit for the ultimate indemnitor.[68]

In *Lirette*, the Fifth Circuit found pass-through or conduit indemnification between a boat owner and a charter for the charterer's duty to indemnify an oil company when the time charter between the boat owner and charter provided for indemnity of the "Charterer, its affiliated companies . . . [for] . . . any claims or suits resulting from injury or damage to Owner's employees, Charterer's employees or third persons . . . arising out of, or in any way connected to the operation of the vessel . . . unless caused by the sole negligence of Charterer."[69]   The court found that the boat owner was required to indemnify charter for its contractual liability to the oil company because the charter's indemnity language including "affiliated companies" and claims "arising out or, in way connected to the operation of the vessel" clearly indicated an intent on the part of the boat owner to make good all losses of the charterer, even if those losses were incurred because the charterer was passing along its liability from a separate contract between charterer and the oil company.[70]

Similarly, in *St. Paul Surplus Lines Ins. Co. v. Halliburton Energy Serv., Inc.*, the Fifth Circuit, relying upon *Lirette*, held that contractual language requiring indemnity for "personal injury . . . of Contractor's employees or the employees of Contractor's subcontractors . . . against any and all such claims, demands or suit which may be brought against LLOG by any such party . . . in

---

[68] *Lirette v. Popich Bros. Water Trans., Inc.*, 699 F.2d 725, 728 (5th Cir. 1983).

[69] *Id.* at 726-28.

[70] *Id.* at 728.

18

anywise arising out of or incident to the work to be performed under this contract by Contractor, or

Contractor's subcontractors" created a right of indemnity for contractual liabilities.[71]  In reversing

the District Court's ruling, the Fifth Circuit found that the stricter holdings of *Foreman* and *Corbitt*

no longer defined when and how a right of indemnity for contractual liabilities is created in a

maritime contract.[72]  Comparing *Lirette* and *Corbitt*, the Fifth Circuit found that the indemnity

language in both cases was substantially similar with the exception that the contract in *Lirette*

included "affiliated companies and anyone for whom the vessel may be working" in the list of parties

who were entitled to indemnity.[73]  Additionally, the Fifth Circuit observed that the District Court's

conclusion that the phrase "for injury to or death or illness of persons" limits indemnity to tortious

injuries was in conflict with *Lirette*'s holding that the inclusion of Popich's employees in the contract

destroyed the distinction between contractual and tortious liability.[74]

   Here, Section 12 provides indemnity to GOL and GOL's subcontractors, including Offshore

Liftboats, for "Claims" made by Nippon and Nippon contractors, including Island.[75]  Section 12, by

including subcontractors in the definition of "Contractor's Group," provides for the pass-through

---

[71] *St. Paul Surplus Lines Ins. Co. v. Halliburton Energy Serv., Inc.*, 445 F.3d 820, 823 (5th Cir. 2006).

[72] *Id.* at 824-26.

[73] *Id.* at 825.

[74] *Id.* at 824 n. 5.

[75] Exhibit "A," § 12(e).

indemnity of Offshore Liftboats in the same way that the contract in *Lirette* required the boat owner to indemnify its charterer for contractual liabilities incurred to a third-party oil company when the contract specified indemnity to "affiliate companies" for claims "arising out of . . . the operation of the vessel."

Additionally, as in *St. Paul Surplus Lines*, where a contract requiring indemnity "for personal injuries . . . of contractor's employees or the employees Contractor's subcontractor's" was held to provide a right for indemnity for contractual liability, here too Section 12 should be similarly construed because it requires members of "Company's Group" to indemnity "Contractor's Group" (a group which includes both GOL and Nippon) for all "Claims . . .for personal or bodily injury . . . which are asserted by or arise in favor of any member of Company's Group." Further, as the court observed in *St. Paul Surplus Lines*, the law in regards to indemnity for contractual liabilities has departed from the more limited contractual interpretation in cases such as *Corbitt* to the more accommodating interpretations in *Lirette.* It further appears that the inclusion of indemnity language referring to tortious conduct alone does not preclude indemnity for contractual liabilities when those identified as potential indemnitiees extend beyond the parties to the contract. Here, those with a right to indemnity include members of "Contractor's Group" a group which includes not only GOL but also Offshore Liftobats, and, as a member of "Contractor's Group" Offshore Liftboats is entitled to indemnity from Nippon either on the basis of GOL's contractual liability or directly on the basis of Offshore Liftboats potential tortious liability.

20

Therefore, Nippon is required to indemnify GOL for GOL's contractual liability to Offshore Liftboats because Section 12 requires Nippon to indemnify GOL and members of GOL's group, including Offshore Liftboats, for "Claims" arising out of the Master Service Contract between GOL and Nippon.

## IV.    **CONCLUSION**

In consideration of the foregoing, Nippon should be required to provide indemnity to GOL for GOL's contractual liability to Offshore Liftboats for claims brought by Denvey Ebanks, an employee of Island, Nippon's contractor, pursuant to the clear and express language of Section 12 of the Master Service Contract between GOL and Nippon.  Nippon is required to indemnify GOL because 1) the Master Service Contract is enforceable, 2) the definition of "Claims" in Section 12 clearly contemplates indemnification for contractual liabilities, and 3) the inclusion of subcontractors in "Contractor's Group" clearly evidences an intent to provide pass-through indemnity for Offshore Liftboats through GOL.

21

Respectfully submitted,

PREIS & ROY

BY:    /s/ Christopher C. Meeks
       CARL J. HEBERT (#06724)
       JOSEPH E. LEE III (#26968)
       CHRISTOPHER C. MEEKS (#32202)
       Pan American Life Center
       601 Poydras Street, Suite 1700
       New Orleans, Louisiana 70130
       Telephone:(504) 581-6062
       Facsimile:(504) 522-9129

       **Attorneys for GULF OFFSHORE
       LOGISTICS, LLC, Third-Party Defendant
       and OFFSHORE LIFTBOATS, LLC,
       Defendant**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing has this date been served on all counsel of record in this proceeding by:

( ) Hand Delivery            ( ) Prepaid U.S. Mail

( ) Facsimile                ( ) Federal Express

( X ) Electronic Mail        ( ) Federal Express

New Orleans, Louisiana, this 5th day of August 2009.

       /s/ Christopher C. Meeks
       Christopher C. Meeks